UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-76 DRL |
| FUN F/X II, INC. and CAO ENTERPRISES II, LLC, | |
| Defendants. | |

## ORDER

Earlier this year, the court granted summary judgment for Frankenmuth Mutual Insurance Company and directed entry of judgment, later as amended. As the prevailing party, Frankenmuth submitted its bill of costs for $8,967.88. Fun F/X II, Inc. and Cao Enterprises II, LLC (collectively Fun F/X) objected. The court now directs the clerk to tax costs in the reduced amount of $8,160.76.

Under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920, a prevailing party may recover costs. There is a presumption that the losing party will pay costs, though the court has the discretion to direct otherwise. *Rivera v. City of Chi.*, 469 F.3d 631, 634 (7th Cir. 2006); *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 221-22 (7th Cir. 1988). Costs must be authorized by statute and be both "reasonable and necessary to the litigation." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). The prevailing party bears the burden of showing that the costs were reasonable and necessary, *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009), whereas the losing party must show that the costs are otherwise not appropriate, *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

First, Fun F/X objects to the $36.00 cost for a CD with records from fire and emergency services. The only document that Frankenmuth submitted in support of this request was a $36.00

credit card receipt without any information about what records are contained on the CD or how they were necessary to the litigation. Fun F/X says this cost shouldn't be taxed because there is no evidence that the cost was reasonable and necessary. *See, e.g.*, *Moore v. Univ. of Notre Dame*, 22 F. Supp.2d 896, 914 (N.D. Ind. 1998) ("when the Court is unable to determine whether the copies in question were reasonably necessary for use in the case, the claim for such costs should be denied"). Frankenmuth didn't respond to this point. *See Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017). Given the dearth of evidence as to why this cost was reasonable and necessary, the court sustains the objection and subtracts $36.00 from the total costs.

Second, Fun F/X objects to the costs associated with *pro hac vice* fees. These costs include three separate line items ($16.00, $96.00, and $180.00) for a total of $292.00. "[P]*ro hac vice* fees are not taxable 'costs' [under 28 U.S.C. § 1920]." *Canter v. AT&T Umbrella Benefit Plan No. 3*, 33 F.4th 949, 959 (7th Cir. 2022). The court thus sustains the objection and subtracts $292.00 from the bill of costs.

Third, Fun F/X objects to the incidental costs associated with certain depositions for condensed transcripts, a digital transcript, exhibits with tabs, color exhibits, and processing and compliance fees. The condensed transcripts weren't necessary to the litigation but instead were (as they often are) for the convenience of counsel. *See, e.g.*, *Kuberski v. REV Recreation Grp., Inc.*, 2021 U.S. Dist. LEXIS 19623, 8 (N.D. Ind. Jan. 14, 2021) ("'condensed' transcripts . . . are outside the scope of [§ 1920]"); *Washington v. City of Springfield*, 2011 U.S. Dist. LEXIS 1803, 8-9 (C.D. Ill. Jan. 6, 2011) ("As a general rule, the costs of condensed transcripts are not taxable because they are not necessary to litigation and are merely for the convenience of an attorney.").

Likewise, the court isn't inclined to view the digital transcript as necessary, particularly when this line-item charge only appears for one deposition and when Frankenmuth hasn't established why it needed to pay the deposition solutions company for this digital PDF and couldn't have just created it on its own. *See Trs. of Chi.*, 570 F.3d at 906 (prevailing party bears burden of showing costs were

reasonable and necessary). The court sustains the objections as to the condensed transcripts and the digital transcript and excludes these costs, which amount to $105.00 ($20.00 for the Brandon Bumpus condensed transcript, $35.00 for his digital transcript, $25.00 for the Robert Krizmanich condensed transcript, and $25.00 for the Victor Cao condensed transcript).

On the other hand, the costs for the exhibits with tabs and color exhibits strike the court as "'incidental' to the taking of the depositions" and are recoverable as such. *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995); *see also Press Ganey Assocs., Inc. v. Dye*, 2014 U.S. Dist. LEXIS 64134, 14-15 (N.D. Ind. May 8, 2014) (court declined to limit recovery of costs for color copies of deposition exhibits). Although counsel often will bring or receive the exhibits in the course of a deposition, invariably notes are taken on them; and the compiled official set of exhibits will be needed for later uses, not least without revelation of this work product. In addition, the court may tax costs for the exemplification and making of copies of any materials when the copies are necessarily obtained for use in the case. 28 U.S.C. § 1920(4). The court is satisfied that the deposition exhibits were reasonably necessary to the case and weren't just a matter of convenience or extravagance. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428-29 (7th Cir. 2000). The cost for the deposition exhibits makes up a small fraction of the total bill ($83.60 for exhibits among three depositions). The processing and compliance fees also appear to have been incidental to the taking of the depositions, *see Finchum*, 57 F.3d at 534, so the court declines to limit Frankenmuth's recovery of them.

Fourth, Fun F/X objects to the cost for the expedited delivery of Mr. Cao's first deposition transcript. The invoice for the first session of the Cao deposition includes a $517.73 charge for "6 day expedite." Fun F/X says this cost was incurred solely for the convenience of Frankenmuth's counsel and shouldn't be taxed. But as Frankenmuth points out, it only requested an expedited transcript because Fun F/X requested one. It was reasonable and necessary on Frankenmuth's part, particularly

3

given that the parties planned to reconvene the deposition in short order.[1] The record provides no cause to question Frankenmuth's strategy decision in this regard, *cf. Press Ganey*, 2014 U.S. Dist. LEXIS 64134 at 13 ("the Court infers that strategy decisions were made about the value of particular deponents to their case, which implies that real-time transcription was a necessity with the deponents for which it was used"), so the court overrules this objection.

Fifth, Fun F/X objects to the per-page cost associated with the Bumpus, Krizmanich, and Cao deposition transcripts. The cost per page of the Bumpus deposition transcript was $4.95, and the cost per page of the Krizmanich and Cao (first session) deposition transcripts was $5.85. Fun F/X says these rates are higher than the appropriate rate set by General Order 2018-3, which is $3.65 per page. *See* United States District Court for the Northern District of Indiana, General Order 2018-3, https://www.innd.uscourts.gov/sites/innd/files/2018-03.pdf (last visited July 14, 2022). However, this General Order doesn't apply to transcripts obtained from private court reporters. *Id.*; *see also McAllister v. Innovation Ventures LLC*, 2020 U.S. Dist. LEXIS 138091, 8 (N.D. Ind. Aug. 4, 2020) ("There is no language indicating that General Order 2011-3 [prior version of General Order 2018-3] regulates the cost of deposition transcripts that are procured from private court reporters.").

Frankenmuth attached its invoices from Esquire Deposition Solutions [ECF 65 at 22-23, 27], a reputable transcription company that has been around since 1978. This company, or for that matter any reporting company, wouldn't be used by lawyers for long if its rates were demonstrably unreasonable and outside prevailing fair market standards. An invoice from a reputable reporting company, retained at arms-length, is some evidence of a reasonable private rate. Fun F/X merely points to General Order 2018-3, but that doesn't apply by its own terms; and there could be a host of

---

[1] The first session of the Cao deposition occurred on November 2, 2021 [ECF 70-3]. At the end of that session, counsel on both sides requested expedited transcripts "by next Wednesday" [*id.* at 139:2-20], which would have been November 10, 2021. The deposition reconvened on November 12, 2021 at 9:00 a.m. [*id.* at 138:18-19; ECF 65 at 28 (job date of 11/12/2021)]. By requesting an expedite, counsel on both sides had time to review the transcript from the first session before reconvening for the second session.

4

reasons why a federal rate may not quite capture a reasonable private rate. *See McAllister*, 2020 U.S. Dist. LEXIS 1308091 at 10. Just as an example, the 2018 order predates the COVID-19 pandemic during which private court reporters have often justifiably increased rates because of the added burden of transcribing depositions virtually. Certain depositions on this record occurred just so.

That said, the record also reflects some seeming inconsistency among private rates, not least those charged by Esquire. Esquire charged, as a base rate, $4.95 for one deposition and $5.85 for two other depositions. There is no explanation offered by Frankenmuth for the difference in the Esquire rates. There may well be one—just by way of examples, per-page rates may increase for experts or when depositions are videotaped, thereby requiring the court reporter respectively to bring more expertise to bear in transcription or time to review the videotape to dovetail the transcript. But these reasons don't explain the difference in Esquire rates here because $5.85 applied to a fact witness and $4.95 was charged likewise for at least one videotaped deposition (Bumpus). In addition, other transcription companies charged $3.05 (for two depositions) and $5.48 (for one deposition, but expedited). The $5.85 rate exceeds what Esquire otherwise charged and exceeds what another company charged for an expedited turnaround. There is thus cause to put Frankenmuth to its burden to explain the reasonableness of this higher rate. It hasn't done so. The court thus sustains this objection in part and reduces the cost for the Krizmanich and Cao (first session) deposition transcripts to reflect a $4.95 per-page rate, which results in a $212.40 reduction ($53.10 from Krizmanich and $159.30 from the first Cao session).

Sixth, Fun F/X objects to the costs for the court reporter appearance fees associated with certain depositions. Fun F/X says these fees may only be taxed when it doesn't make the total per-page cost for the deposition transcript exceed the rate from the General Order. *See, e.g.*, *Berry Plastics Corp. v. Intertape Polymer Corp.*, 2017 U.S. Dist. LEXIS 5989, 8-9 (S.D. Ind. Jan. 17, 2017) (sustaining objection to the court reporter attendance fee when it made the overall cost of the deposition exceed

the regular copy rates approved by the Judicial Conference). Once more, this argument is unavailing because General Order 2018-3 doesn't apply to private court reporting fees. *See McAllister*, 2020 U.S. Dist. LEXIS 1308091 at 8, 10. In addition, appearance fees were incidental to the taking of the depositions, *see Finchum*, 57 F.3d at 534, and aren't an uncommon part of the overall market cost for the services of a private court reporter. Aside from relying on the General Order, Fun F/X hasn't made any other argument as to why these fees would be inappropriate. *See Beamon*, 411 F.3d at 864. The court thus overrules this objection.

Seventh, Fun F/X objects to the costs for videotaping the Bumpus, Krizmanich, and Cao depositions. Fun F/X argues these costs should be excluded because the videos weren't used in connection with the crossmotions for summary judgment, the videos were unnecessary given the existence of the transcripts, and Frankenmuth hasn't demonstrated why the costs associated with the videos were reasonable. Though these videos weren't presented to the court, that doesn't mean they weren't necessary at the time they were procured. *See Majeske v. City of Chi.*, 218 F.3d 816, 825 (7th Cir. 2000) (determination of necessity must be made in light of the facts known at the time). Video depositions are regularly used at trial; they have become a normalized part of trial practice, and often will prove more effective tools—even more efficient tools in the hands of skilled counsel—than written transcripts. Frankenmuth shouldn't be penalized for having purchased and preserved these videos for future use. *See Press Ganey*, 2014 U.S. Dist. LEXIS 64134 at 14 (refusing to limit recovery of costs for video depositions even though the videos were never submitted to the court).

Although Frankenmuth also obtained transcripts from the depositions, "the costs of both video-recording and stenographic transcription [may] be taxed to the losing party." *Little*, 514 F.3d at 702. Still, Fun F/X says Frankenmuth hasn't demonstrated that these costs were reasonable, particularly the costs for synchronization and handling. In response, Frankenmuth says these charges "which total only a few hundred dollars, are otherwise not unreasonable by any means" [ECF 70 at

6

7]. Frankenmuth has submitted invoices from reputable transcription companies [ECF 65 at 24-26; ECF 70-2 at 3], which tend to show the market rate for these services. These charges likewise appear reasonable based on the presiding judge's own experience with video depositions. The often customary costs for synchronization and handling are incidental to the taking of the video depositions. *See Finchum*, 57 F.3d at 534. The court thus overrules this objection.

Eighth, Fun F/X objects to the cost for the Scott Horvath deposition, arguing that Frankenmuth hasn't provided sufficient documentation to support it. The invoice for this deposition shows a total amount due of $236.51 without any breakdown of this cost or the per-page cost rate for the transcript. The invoice from Associated Reporting, Inc.—a reporting company used by other lawyers in this market—is some evidence of a reasonable cost. Although the number of pages in the transcript isn't indicated in the invoice, it appears from the summary judgment record that the Horvath deposition transcript was about 103 pages [ECF 45-9; ECF 47-3]. That equates roughly to a $2.30 cost per page. The court thus overrules this objection.

Ninth, Fun F/X objects to the cost for the second session of the Cao deposition, arguing that Frankenmuth didn't provide any itemization for this cost. The total amount was $1,050.53 [ECF 65 at 28]. In response, Frankenmuth provided a further breakdown of this cost from StewartRichardson, which indicates that the transcript was 185 pages and the company charged $5.48 per page [ECF 70-2]. Frankenmuth says the additional charge per page reflects a premium for the expedited transcript. Indeed, the invoice shows "3-day expedite" [*id.*]. Though it was reasonable for Frankenmuth to request an expedited transcript following the first session of the Cao deposition—given that Fun F/X requested one and the parties planned to reconvene the deposition [*see* ECF 70-3]—Frankenmuth hasn't shown why it was reasonable or necessary to request a 3-day expedite on the second Cao transcript. Because the rate was undoubtedly higher due to the 3-day expedite, the court partially sustains the objection and applies a 10 percent reduction to the $1,013.80 transcript cost. This results

in a $101.38 reduction. The court leaves intact the $16.73 cost for scanned exhibits and the $20.00 cost for the word index [ECF 70-2], given that these are incidental costs. *See Finchum*, 57 F.3d at 534.

Tenth, Fun F/X objects to the $603.36 cost for the transcript from the examination under oath (EUO) of Mr. Cao. Fun F/X says it isn't a deposition and isn't taxable under 28 U.S.C. § 1920(2). However, that subsection of the statute says the court may tax as costs fees for "printed or electronically recorded transcripts necessarily obtained for use in the case," without specifically limiting the fees to *deposition* transcripts. Frankenmuth says the transcript from Mr. Cao's EUO was used in connection with his deposition and other discovery leading up to Frankenmuth's summary judgment motion. Though Frankenmuth didn't attach the EUO transcript to its motion for summary judgment, that doesn't preclude Frankenmuth from recovering the cost. *See Majeske*, 218 F.3d at 825 ("introduction of testimony from a transcript is not a prerequisite for finding that it was necessary").

Still, as Fun F/X points out, the invoice from StewartRichardson for the EUO transcript doesn't itemize the cost per-page [ECF 65 at 13], and Frankenmuth hasn't added facts to the record to assist the court in understanding the work underlying this invoice. Another quite reputable provider, StewartRichardson has been used for years by trial attorneys, and many of its court reporters have been in the business even before joining the company. Its invoice—along with the others within the record for transcription services—again offers some evidence of a reasonable expense. But without knowing the number of pages in the transcript, the court cannot assess whether the total $603.36 cost should be taxed under the law or only a portion of it. When a prevailing party fails to provide sufficient information, the court may reduce costs by a percentage or deny them entirely. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp.2d 962, 979 (N.D. Ill. 2010) (collecting cases). On this record, the court sustains the objection in part and reduces the cost by 10 percent (the equivalent reduction used to adjust other deposition rates for which Frankenmuth hadn't met its burden)—a $60.34 reduction.

Eleventh, Fun F/X objects to the $151.20 in costs for the court reporting service used to copy the pre-marked exhibits for the Heather Love and Marlene Butts depositions. The deposition services company included a $46.80 cost for the Love deposition exhibits and a $104.40 cost for the Butts deposition exhibits. Fun F/X says these costs are unnecessary because the exhibits were emailed to Frankenmuth's counsel before the depositions. Fun F/X attaches the email it sent to Frankenmuth [ECF 67-1, Ex. A]. The email doesn't specifically mention the Love or the Butts deposition; it only references "today's deposition" in the singular; and it only mentions "additional exhibits" (and so the URL link may not have included all the exhibits). What's more, there's no indication that Fun F/X provided Frankenmuth with printed copies of these exhibits aside from the URL link. As the court has already explained, the costs for deposition exhibits are generally recoverable. *Finchum*, 57 F.3d at 534; *Press Ganey*, 2014 U.S. Dist. LEXIS 64134 at 14-15. The court overrules this objection.

For the foregoing reasons, the court SUSTAINS IN PART and OVERRULES IN PART Fun F/X's objections [ECF 67] to Frankenmuth's bill of costs [ECF 65]; and, in accordance with this order, DIRECTS the clerk to tax costs for Frankenmuth and against Fun F/X in the total amount of $8,160.76.

SO ORDERED.

July 15, 2022                                         *s/ Damon R. Leichty*
                                                     Judge, United States District Court

9